IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| YASHICA LIGHTNER o.b.o. D.W, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:09cv898-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff Yashica Lightner filed this lawsuit on behalf of her son, D.W.,[1] to review a final judgment by Defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that D.W. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner.[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, D.W.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[3] For the reasons that follow, the court concludes that the Commissioner's decision denying D.W. supplemental security income benefits is due to be affirmed.

## I. STANDARD OF REVIEW

An individual under 18 is be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

---

[3] 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

The Commissioner's regulations provide that if a child's impairment or impairments does not meet, or is not medically equal or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d) (2003). In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

## II. PLAINTIFF'S CLAIMS

As stated by the plaintiff, the issues for the Court's review are as follows.

1. The Commissioner's decision should be reversed, because the ALJ erred by failing to determine that D.W.'s recurrent upper respiratory infection was a "severe" impairment.

2. The Commissioner's decision should be reversed, because the ALJ's step three finding lacks the support of substantial evidence.

3. The Commissioner's decision should be reversed, because the ALJ failed to issue a credibility finding in compliance with the law of the Eleventh Circuit.

(Doc. # 12, Pl's Br. at 10).

## III. DISCUSSION

The ALJ, in his opinion, followed the regulations' three steps as listed above when he analyzed D.W.'s claim. Under the first step, the ALJ found that D.W. is not engaged in substantial gainful activity. (R. 12). D.W. was born on April 21, 2004, and was considered an older infant when his application for disability was filed. (*Id.*). At the time of the decision, he was a preschooler. (*Id.*). At the second step, the ALJ found that D.W. has the severe impairment of asthma. (*Id.*). Next, at step three, the ALJ found that D.W. did not

have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)." (*Id*.). The ALJ also found that D.W. "does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a)." (*Id*). The ALJ concluded that D.W.'s limitations result in no limitations in five of the six domains of functional limitations, and that he "has less than marked limitation" in the health and physical well-being domain of functional limitation. (R. 14-19). Consequently, the ALJ concluded that D.W. is not disabled.

 First, the court considers whether D.W. has a severe impairment of "recurrent upper respiratory infection." According to the plaintiff, "[t]he plethora of symptoms imposed by this medically determinable impairment, such as nasal congestion, coughing spells, fussiness/irritability, runny nose, decreased appetite, serves as *prima facie* evidence that it significantly impacted D.W.'s ability to function." (Doc. # 11, Pl's Br. at 11). This argument borders on the frivolous. The symptoms the plaintiff relies on are common to all children, particularly young ones, with colds or other respiratory ailments; they do not rise to the level of a severe impairment for purposes of disability benefits. The mere fact that D.W. has suffered from an upper respiratory infection is insufficient to support a finding that this condition constitutes a severe impairment within the meaning of the regulations. It is not sufficient to simply point to a diagnosis of a condition. D.W. must demonstrate that his upper respiratory infection "results in marked and severe functional limitations, and which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). This he fails to do. The medical evidence demonstrates that while D.W. suffered from upper respiratory infections in June, July, August and November, 2004 and February and July 2005, he has not suffered from an upper respiratory infection since December 7, 2005. (R. 255-56). In August, 2006, Dr. Brown noted that D.W.'s upper respiratory condition was improved. (R. 257-58). The plaintiff points to no evidence in the record from which the court could conclude that the ALJ erred in failing to find that D.W.'s upper respiratory infection constitutes a severe impairment.

The next issue raised by the plaintiff is whether the ALJ failed to properly consider whether D.W. meets or equals Listing 103.03. The Commissioner's Listings provide, in pertinent part, that a child is disabled due to asthma if he meets the following criteria:

103.03 *Asthma*. With:

\*   \*   \*

  B. Attacks (as defined in 3.00C)[4], in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at

---

[4] The regulations define asthma attacks as follows.

Attacks of asthma . . .are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. . . . The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.00(C).

least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;

Or

   C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

  \*      \*      \*

   2. Short courses of corticosteroids that average more than 5 days per month for at least three months during a 12-month period;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 103.03 (B) and (C)(2).

D.W. was born on April 21, 2004. (R. 12). On May 5, 2004, D.W. was seen at Dothan Pediatric Clinic for his two-week checkup. (R. 223-25). His lungs were clear with no wheezing. On June 4, 2004, D.W. had a cold and a cough, and was diagnosed with an upper respiratory infection. (R. 226-27). On July 17, 2004, at nine weeks old, D.W.'s mother sought treatment for D.W.'s wheezing. (R. 230). Although his lungs were clear, D.W. was diagnosed with an upper respiratory infection. (*Id*.) On July 23, 2004, D.W.'s mother complained that D.W. needed a breathing machine.

> Mom concerned about patient's breathing episode last night and is requesting a "breathing machine" for at home. Patient's lungs are clear bilaterally to all fields. . . . [A] breathing machine is not warranted at this time.

(R. 231-33).

On August 17, 2004, D.W. was seen at the clinic with wheezing, coughing and

congestion. (R. 235-36). He had bilateral expiratory wheezing, and he was diagnosed with Reactive Airways Disease/Periodic Breath. He was also diagnosed with Gastroesophageal Reflux. (R. 139). He was prescribed Albuterol and Orapred. (*Id*.).

On September 28, 2004, D.W. was taken to the emergency room suffering from an asthma attack. (R. 196-200). He was treated with an Albuterol inhalant. (*Id*.)

On November 8, 2004, D.W. was suffering from bilateral expiratory wheezing. His asthma was exacerbated, and he was prescribed Albuterol, Pulmicort and Orapred. (R. 238-39). On November 16, 2004, D.W. was suffering from an upper respiratory infection. Although his nose was congested, his lungs were clear, and he was not wheezing. (*Id*.; *see also* R. 141-42) He was prescribed Accuhist. (*Id*.) On November 29, 2004, D.W.'s mother complained that D.W. was still wheezing after three breathing treatments. On examination, D.W.'s lungs were clear and there was no wheezing. (R. 242). He was diagnosed with an upper respiratory infection and asthma exacerbation. (R. 242-43). D.W. was prescribed Orapred and Albuterol. On December 10, 2004, in a follow-up appointment, D.W. was doing much better; he had no cough or wheeze. (R. 143, 244).

On January 6, 2005, D.W.'s mother complained that D.W. was wheezing. He was congested and was experiencing some bilateral wheezing. (R. 144-45, 245-46). On January 24, 2005, D.W. was seen at the Abbeville Family Practice Center for an ear infection. (R. 158). On February 25, 2005, D.W. had a fever, cough and was wheezing. He was diagnosed with an ear infection. (R. 146-47, 249-51). On April 1, 2005, D.W.'s mother requested

antibiotics from the Abbeville Family Practice Center for a fever and runny nose. (R. 157-56). On July 21, 2005, D.W. was experiencing some mild expiratory wheezing in both lungs. (R. 253-54). He was diagnosed with an upper respiratory infection. (R. 148-49).

At his eighteen-month baby wellness examination on December 7, 2005, D.W. had no cough or wheezing; his lungs were clear; and he had no recent upper respiratory infections. (R. 255). "The baby appears to be doing well presently. . ." (R. 256).

At his two-year baby wellness examination on August 18, 2006 at the Dothan Pediatric Center, the doctor noted that D.W.'s upper respiratory and reactive airways conditions were both improved. (R. 150-15, 257-58). On the same date, D.W.'s mother requested asthma medication from the Abbeville Family Practice Center. The Center refused to call in a prescription because D.W. had not been seen at the clinic since 2005.

On July 13, 2007, Dr. Richard Meadows conducted a pediatric evaluation of D.W. at the behest of the Social Security Administration. (R. 165-67). Dr. Meadows had previously treated D.W. for his asthma. Dr. Meadows noted that D.W.'s medications helped his asthma and that his asthma "is intermittent." (R. 166).

> Patient has a history of asthma and he has symptoms as noted above. It is intermittent. It is treated well with medicine. He has no further history of lung pathology. . . . The patient has some coarse breathing but no wheezes were noted on auscultation. No respiratory distress was noted. . . .
>
> IMPRESSIONS
>
> The patient has asthma. His pediatrician is Dr. Kenneth Brown. He has also been seen by myself at this facility before. His meds usually work. He has had about 4 ER visits in the last 12 months, but no hospital stays. He has had to

be on steroid treatment three times in the last 12 months because of asthma flares.

(R. 166-67).

On July 31, 2007, D.W. was seen at the Abbeville Family Practice Center for treatment of his asthma. He was treated with steroids. (R. 180-82). D.W.'s asthma was subsequently treated at Abbeville on September 11, 2007, October 19, 2007, and February 18, 2008. (R. 177-79, 187).

The medical record clearly demonstrates that D.W. suffers from asthma and that he takes medication. D.W. argues that he meets or equals Listing 103.03 because his mother "has repeatedly sought medical attention for [his] asthma and respiratory problems including six visits between October 10, 2006, and October 19, 2007 for asthma and other respiratory issues." (Doc. # 12, Pl's Br. at 11). In concluding that D.W. did not meet, equal or functionally equal any of the Listings, the ALJ considered the medical evidence and the requirements of the Listing.

> The medical evidence of record does not document any respiratory abnormalities necessary to meet or medically equal the requirements of Section 103.03 of the Listings, governing asthma. The undersigned notes that in November of 2007, Richard V. Meadows, D.O., who had treated the claimant in the past, provided a statement indicating that the claimant has asthma attacks, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year (Exhibit B1F). A claimant's asthma condition meets the requirements of Section 103.03B of the Listings if the asthma is accompanied by attacks, as defined in Section 3.00C of the Listings, in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Section 103.03B states that each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an

evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. Section 3.00C defines attacks of asthma as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bonchodilator therapy in a hospital, emergency room or equivalent setting. The medical evidence of record does not document the respiratory abnormalities necessary to meet these requirements.

(R. 12).

The ALJ's conclusion that D.W. does not meet or equal Listing 103.03B is supported by the record. Although D.W.'s mother told Dr. Meadows in 2007 that D.W. had been to the emergency room four times in the past year, medical records do not support this assertion. (R. 165). The medical evidence demonstrates that D.W. was taken to Flowers Hospital only twice in three years because of his asthma. (R.186-204). On September 28, 2004, D.W. was seen at the emergency room for wheezing and treated with Albuterol. (R. 196-200). On November 8, 2006, D.W. suffered an acute exacerbation of his asthma. He was treated and discharged.[5] (R. 186-204). On September 29, 2008, D.W. was treated at Lakeview Community Medical Center in Eufaula, Alabama. He was coughing and wheezing "since being around a controlled burn" a day earlier. (R. 216-221). He was treated and released. D.W.'s mother returned to the medical center the next morning complaining that D.W. wheezed all night despite two treatments of Albuterol (R. 213). D.W. was treated with Albuterol and released. (*Id*.). A review of the medical record demonstrates that substantial evidence supports the ALJ's finding that D.W. did not suffer the requisite asthma *attacks* as

---

[5] D.W. was taken to the emergency room at Flowers Hospital on August 12, 2006 because he had fallen out of a chair and hit his head. (R. 193-95).

defined in Section 3.00C of the Listings, for the twelve month durational period necessary to meet or equal the Listing. Treatment for asthma does not equate to treatment for asthma attacks under the Listing.

To the extent that D.W. argues that the ALJ should have relied on his mother's testimony to determine that he meets or equals Listing for 103.03, he is entitled to no relief. The ALJ considered and then discredited D.W.'s mother's testimony. (R. 13).

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could be reasonably expected to produce the alleged symptoms;, however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent that they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings *for the reasons explained below*.

(*Id.*) (emphasis added). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ continued his analysis and discredited D.W.'s mother's testimony as follows.

> The claimant has been treated and followed for asthma for most of his life (Exhibits B2F, B3F, B5F,B8F, B9F, B10F, B11F, B12F). Although the claimant complained of wheezing, coughing, and shortness of breath, most of the respiratory observations recorded by his medical providers have been normal and unremarkable. The claimant's asthma condition has been treated with nebulizers, inhalers, drops, and occasional short courses of prednisone. Although the claimant has occasionally gone to the emergency room for his asthma, he has apparently never stayed in the hospital overnight (Exhibit B5F). Dr. Meadows has noted that the claimant's asthma is intermittent and is treated well with medication (Exhibit B5F). Dr. Meadows has also noted that the claimant eats well, has good muscular development, is very active, and has good balance. Notes from the claimant's recent visits to his pediatrician's office in February of 2009 indicate that his asthma condition is stable (Exhibit B12F).

(R. 13).

Where an ALJ decides not to credit a witness's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). After a careful review of the record, the court concludes that although the ALJ's reasons for discrediting the D.W.'s mother's testimony could have been more clearly articulated, his reasons were supported by substantial evidence. The ALJ properly relied on treatment records and objective evidence to discount her testimony, and substantial evidence supports the ALJ's credibility determination.[6] It is undisputed that D.W.

---

[6] To the extent that D.W. is arguing that the ALJ should have accepted his mother's testimony regarding his hospitalizations, the efficacy of his treatment, and the disabling effects of his asthma, as the court explained, the ALJ had good cause to discount that testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

suffers from asthma. However, the ALJ concluded that while D.W.'s condition is capable of giving rise to some limitations, his impairment is not so severe as to be considered disabling. Thus, for the reasons as stated, the ALJ's conclusion that D.W. does not have meet or equal Listing 103.03 is supported by the record.

D.W. also challenges the ALJ's determination about the severity of his functional limitations. In order to functionally equal a listing, D.W.'s impairments must result in "marked" limitations in two or more functional domains or "extreme" limitation in one functional domain. 20 C.F.R. § 416.926a(a). The ALJ was required to consider six areas of development: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being. (*Id*. at 416.926a(b)). The ALJ concluded that D.W. had "no limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, and self-care. (R. 14-19). However, the ALJ found that D.W. "has less than marked limitation" in the area of health and well-being.

> The claimant has some limitation in this domain; but, the limitation is not marked. The claimant has been treated for asthma most of his life and he has occasionally gone to the emergency room for his asthma (Exhibits B2F, B3F, B5F, B8F, B9F, B10F, B11F, B12F). However, most of the respiratory observations recorded by his medical providers have been normal and unremarkable; he has apparently never stayed in the hospital overnight for his condition; Dr. Meadows has noted that his asthma is intermittent and is treated well with medication, he eats well, has good muscular development, is very active, and has good balance; and notes from recent visits to his pediatrician's office indicate that his asthma condition is stable. . . .

13

>Accordingly, the claimant does not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

(R. 18-19).

D.W.'s asthma is treated effectively with medication, and when D.W. is on his medication, his asthma is stable. (R. 263-64, 268-69, 270-71). Under questioning at the administrative hearing, D.W.'s mother testified when D.W. is playing with other children, "it's hard for him to keep up with them because he gets out of breath." (R. 24, 26). The mere fact that D.W. can't keep up with his friends is insufficient to support a finding that he has an extreme limitation in the functional area of health and well-being sufficient to meet or equal a Listing. D.W.'s mother's testimony and the medical records do not support a finding that D.W. has a marked limitation or an extreme limitation in any area of functioning. Thus, the ALJ's conclusion that D.W. does not have more than a "marked" impairment in the health and well-being area of functioning is supported by the record. Consequently, the court concludes that the ALJ's decision is supported by substantial evidence and, thus, the decision of the Commissioner should be affirmed.

## CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that D.W. is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 28th day of October, 2010.

                                          /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE